IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| BRANDON & CLARK, INC., | § § | |
| *Plaintiff* | § § | Civil Action No. _____ |
| v. | § § | |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; CHARLOTTE A. BURROWS, JOCELYN SAMUELS, KEITH E. SONDERLING, ANDREA R. LUCAS, AND KALPANA KOTAGAL, EEOC COMMISSIONERS; KARLA GILBRIDE, EEOC GENERAL COUNSEL; UNITED STATES OF AMERICA, | § § § § § § § § § § § | |
| *Defendants*. | § § | |

## COMPLAINT

Plaintiff Brandon & Clark, Inc., seeks relief from this Court against Defendants Equal Employment Opportunity Commission, Charlotte A. Burrows, Jocelyn Samuels, Keith E. Sonderling, Andrea R. Lucas, Kalpana Kotagal, Karla Gilbride, and the United States of America.

## INTRODUCTION

This lawsuit challenges the constitutionality of a statute that was enacted in violation of the Quorum Clause of the U.S. Constitution and the legality of subsequent regulations implementing certain provisions of that statute. When the House of Representatives voted to pass the Consolidated Appropriations Act of 2023,

1

Pub. L. 117-328, 136 Stat. 4459 (2022), only 201 Members were present in the Hall of the House. But the Constitution excludes absent Members from counting toward a quorum. Thus the House of Representatives did not have the power to vote on the Consolidated Appropriations Act of 2023, and it is therefore not a law.

Division II of the Consolidated Appropriations Act of 2023 contained the Pregnant Workers Fairness Act. The Pregnant Workers Fairness Act requires employers to provide accommodations similar to those offered under the Americans with Disabilities Act to pregnant women employees. Because the House of Representatives purported to pass the Pregnant Workers Fairness Act as part of the Consolidated Appropriations Act of 2023, it too is not a law.

The Pregnant Workers Fairness Act authorized the Equal Employment Opportunity Commission (EEOC) to issue regulations implementing the Act. Pub. L. 117-328, Division II § 105, 136 Stat. 4459, 6088 (2022); Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29,096 (Apr. 19, 2024). This rule, among other things, requires employers to provide accommodations to an employee seeking an elective abortion. Because the Pregnant Workers Fairness Act contained EEOC's sole rulemaking authority for this regulation, the Commission had no authority to conduct the rulemaking and rule is therefore void.

As shown below, the Court should declare that the Pregnant Workers Fairness Act has not been enacted and is not law. Consequently, EEOC has no rulemaking authority on this subject so its implementation rule is invalid.

## PARTIES

1. Brandon & Clark, Inc. is the plaintiff. Brandon & Clark, Inc. is a Texas corporation with its principal place of business in Lubbock.

2. Defendant Equal Employment Opportunity Commission ("EEOC") is an independent agency of the federal government.

3. Defendants Charlotte A. Burrows, Jocelyn Samuels, Keith E. Sonderling, Andrea R. Lucas, and Kalpana Kotagal are members of the Equal Employment Opportunity Commission. They are sued in their official capacities.

4. Defendant Karla Gilbride is the General Counsel of the Equal Employment Opportunity Commission. She is sued in her official capacity.

5. Defendant United States of America is a government entity. It can be sued under the Administrative Procedure Act. 5 U.S.C. § 702.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction and authority to grant the requested relief under 28 U.S.C. §§ 1331, 1346, 2201, 2202, and 5 U.S.C. § 701 et seq.

7. Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(C) because the Plaintiff corporation has its principal place of business in Lubbock, Texas. 28 U.S.C. § 1391(c)(2).

## FACTUAL BACKGROUND

### I. Procedural Background of the Consolidated Appropriations Act of 2023

8. The Pregnant Workers Fairness Act (PWFA) was included in a division of H.R. 2617, the Consolidated Appropriations Act of 2023. Pub. L. 117-328, Division II, 136 Stat. 4459, 6084 (2022) (codified at 42 U.S.C. ch. 21G).

9. H.R. 2617 began its legislative life as the "Performance Enhancement Reform Act" introduced on April 16, 2021. H.R. 2617, 117th Cong. (2021) (as introduced). The bill originally required additional information be included in each federal agency's annual performance plan. *Id.*

10. H.R. 2617 passed the House of Representatives with minor amendments on September 28, 2021. 167 Cong. Rec. H5497–98 (daily ed. Sept. 28, 2021).

11. H.R. 2617 passed the Senate with additional minor amendments on November 15, 2022. 168 Cong. Rec. S6704 (daily ed. Nov. 15, 2022).

12. The House adopted H. Res. 1518 on December 14, 2022. 168 Cong. Rec. H9752 (daily ed. Dec. 14, 2022). In adopting this resolution, the House concurred with the Senate amendments to H.R. 2617 and added an additional amendment consisting of the *Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2023*. 168 Cong. Rec. H9746 (daily ed. Dec. 14, 2022).

13. After H.R. 2617 returned to the Senate, Senator Patrick Leahy introduced Senate Amendment 6552. 168 Cong. Rec. S7328–S7785 (daily ed. Dec. 19, 2022). This amendment was an amendment in the nature of a substitute and completely replaced

the prior text of H.R. 2617 with the Consolidated Appropriations Act of 2023. *Id.* Senate Amendment 6552 did not contain the PWFA. *Id.*

14. Senators Robert Casey of Pennsylvania and William Cassidy of Louisiana introduced the PWFA on April 29, 2021. S. 1486, 117th Cong. (2021); 167 Cong. Rec. S2353 (daily ed. Apr. 29, 2021).

15. On December 20, 2022, Senators Cassidy and Casey introduced Senate Amendment 6558, which amended Senate Amendment 6552 to include the PWFA. 168 Cong. Rec. S9631–32 (daily ed. Dec. 20, 2022).

16. The Senate adopted Senate Amendment 6558, the PWFA, on December 22, 2022, by a vote of 73-24. 168 Cong. Rec. S10071 (daily ed. Dec. 22, 2022).

17. Later that day the Senate adopted Senate Amendment 6552 and passed H.R. 2617 by a vote of 68-29, with 3 Senators not voting. 168 Cong. Rec. S10077 (daily ed. Dec. 22, 2022).

18. The House voted to concur in the Senate amendments and pass H.R. 2617 on December 23, 2022. 168 Cong. Rec. H10528–29 (daily ed. Dec. 23, 2022). The final vote total was 225-201, with one Representative voting present[1] and four Representatives not voting. *Id.* Of the 426 votes cast, 226 of these votes were cast in person and 201 were delivered by proxy. *Id.*

19. The 117th Congress consisted of 435 Representatives. *See* Act of August 8, 1911, Pub. L. No. 62-5, 37 Stat. 13-14 (1911); 2 U.S.C. § 2a(a). On December 23, 2022

---

[1] Representative Rashida Tlaib voted present by proxy. 168 Cong. Rec. H10528–29 (daily ed. Dec. 23, 2022) (Representative Andrew Levin of Michigan delivered the present vote as Representative Tlaib's proxy).

5

there were 431 Representatives in office, with 4 vacancies. 168 Cong. Rec. H9651 (daily ed. Dec. 12, 2022) (upon the resignation of Rep. Karen Bass on December 9, the Speaker of the House announced "the whole number of the House is 431.").

20. The President signed H.R. 2617 into law on December 29, 2022. Pub. L. 117-328, 136 Stat. 4459 (2022).

## II. The House of Representatives Adopts a Proxy Voting Rule

21. Rule III of the House of Representatives states "[e]very Member shall be present within the Hall of the House during its sittings." H.R. Rule III, cl. 1, 117th Cong. (2021); H.R. Res. 8, 117th Cong. (2021). The Rule also states that "[a] Member may not authorize any other person to cast the vote of such Member or record the presence of such Member in the House." H.R. Rule III, cl. 2(a), 117th Cong. (2021).

22. Rule III in the 117th Congress was unchanged from Rule III as it applied in the 116th Congress. *See* H.R. Res. 8, 117th Cong. (2021).

23. On May 15, 2020, the House passed H. Res. 965. 167 Cong. Rec. H2253–54 (daily ed. May 15, 2020). H. Res. 965 suspended Rule III's presence requirement and allowed a Representative to deliver proxy votes on another Representative's behalf. H.R. Res. 965, 116th Cong. (2020).

24. H. Res. 965 was to remain in effect for 45 days, and could be renewed (without limitation) for additional 45-day periods so long as the Speaker found a public health emergency existed due to a novel coronavirus. *Id.* § 1(b).

25. Prior to the 116th Congress, the House of Representatives had never authorized votes by proxy on legislation before the full House.

26. The House continued H. Res. 965 in the 117th Congress. H.R. Res. 8, 117th Cong. § 3(s) (2021).

27. The proxy rule was not renewed in the 118th Congress. *See* H.R. Res. 5, 118th Cong. (2023).

28. The Senate never adopted a rule allowing for proxy votes when legislation is before the full Senate. The Senate only allows proxy votes in committees. *See* S. Rule XXVI, 117th Cong. (2021).

### III. The Pregnant Workers Fairness Act Requires Employers to Provide Pregnant Employees with Leave in Certain Situations

29. The PWFA requires covered employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless" doing so would "impose an undue hardship on the operation of the business" and prohibits "deny[ing] employment opportunities," "requiring a qualified employee to take leave," and "tak[ing] adverse action" based on the employee's need for an accommodation. 42 U.S.C. § 2000gg–1(1), (3)–(5).

30. A "covered employer" under the Act is "a person engaged in industry affecting commerce who has 15 or more employees. *Id.* § 2000gg(2)(B)(i).

31. The PWFA imposes the same definitions of "reasonable accommodation" and "undue hardship" as are used in the Americans with Disabilities Act. *Id.* § 2000gg(7).

32. A violation of the PWFA's requirements allows for the same remedies using the same procedures as under Title VII of the Civil Rights Act of 1964. *Id.* § 2000gg–2(a). This includes the requirement to respond to charges of discrimination filed with the EEOC, investigation and litigation by the EEOC, and private actions by allegedly

aggrieved individuals. *Id.* § 2000e–5; 29 C.F.R. §§ 1601.15–17, 1601.23–25, 1601.28–29.

## IV. EEOC Implements the PWFA

33. The PWFA directed EEOC to promulgate regulations to implement the Act. 42 U.S.C. § 2000gg–3.

34. The EEOC's implementing rule defines abortion as a "related medical condition" which requires employers to provide accommodations. Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29,096, 29,104–14, 29,183 (Apr. 19, 2024) (to be codified at 29 C.F.R. § 1636.3(b) ("The following are examples of conditions that are, or may be, 'related medical conditions': termination of pregnancy, including via miscarriage, stillbirth, or abortion")); *see also id.* at 29,191 (to be codified 29 C.F.R. Part 1636 Appendix A, section III, paragraph 18).

35. Accommodations for abortion will require an employer to provide leave for an employee to obtain one. *See* Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29,096, 29,113 (Apr. 19, 2024).

36. Even if an employer voluntarily changes its policies to provide the PWFA's required accommodations, the lack of clarity in the statute and regulation's standards will lead employers to be subjected to EEOC investigation and enforcement actions.

## V. Plaintiff Does Not Provide Leave for Employees to Seek and Abortion and Would Not Do So Absent Legal Compulsion

37. Plaintiff is subject to the PWFA because it employs more than 15 employees.

38. Plaintiff employs 18 female employees, a number of whom are of a child bearing age.

8

39. Plaintiff provides some accommodations to its pregnant employees, but not all of the accommodations the statute and implementing rule require.

40. Plaintiff's leave policy combines all regular leave (including sick leave and vacation) into a combined pool of personal time off. Plaintiff also provides leave under the Family and Medical Leave Act.

41. Plaintiff's leave policy does not allow an employee to take leave to receive an elective abortion.

42. Plaintiff will not change its leave policy to accommodate elective abortion unless it is forced to do so by law.

43. If Plaintiff is subjected to the PWFA, it will incur at least $3,500 in unrecoverable implementation and training costs. Plaintiff estimates it will incur $1,440 per instance to provide an employee with an average accommodation.

## VI.  Claims for Relief

44. To the extent Plaintiff's claims for relief are or may be inconsistent, it pleads them in the alternative.

### Count I
### Declaratory Relief—Quorum Clause Violation

45. An actual and substantial controversy exists between Plaintiffs and Defendants as to their legal rights and duties with respect to whether the PWFA violates the United States Constitution.

46. This case is presently justiciable because the PWFA applies to Plaintiffs as a covered employer and neither the Enrolled Bill Doctrine, Political Questions Doctrine, nor Speech and Debate Clause limit judicial review of this case.

47. Article I, section 5, clause 1 of the Constitution requires a majority of Members in each House be physically present at its meeting place in order to do business.

48. The Constitution's text, structure, and history confirm that the Quorum Clause requires physical presence. Throughout 231 years of wars, pandemics, and national crises, Congress met to conduct business in person.

49. The only exception to this centuries-long practice occurred between 2020 and 2022[2] in the 116th and 117th Congresses. *See* H.R. Res. 965, 116th Cong. (2020); H.R. Res. 8, 117th Cong. § 3(s) (2021); H.R. Res. 5, 118th Cong. (2023).

50. The House's own records reveal that 201 Representatives, less than a majority, were present in the Hall of the House to vote on H.R. 2617, the Consolidated Appropriations Act of 2023. 168 Cong. Rec. H10528–29 (daily ed. Dec. 23, 2022).

51. That bill was never properly enacted into law because the House of Representatives was not empowered to "do Business." U.S. Const. art I, § 5, cl 1. Thus H.R. 2617 did not "pass[] the House of Representatives and Senate" and should not have been presented to the President for his signature. U.S. Const. art I, § 7, cl 2.

52. The House of Representatives voted to pass the PWFA without a quorum present. That legislation therefore violates the Quorum Clause. Plaintiff is entitled to a declaration to that effect. 28 U.S.C. § 2201.

## Count II
## Injunctive Relief—Quorum Clause Violation

53. Plaintiff alleges that the PWFA violates the U.S. Constitution.

---

[2] The House of Representatives adjourned the 117th Congress sine die on January 3, 2023, but no votes occurred in the 117th Congress in 2023. 168 Cong. Rec. H10550 (daily ed. Jan. 3, 2023).

54. Plaintiff is entitled to both preliminary and permanent injunctions preventing Defendants from enforcing the PWFA. Each of the factors for the award of injunctive relief weigh in favor of Plaintiff.

55. As a covered employer, Plaintiff is a direct object of the PWFA's regulations. Implementing the PWFA will cost Plaintiff $3,500. This compliance cost will be unrecoverable once expended. Furthermore, each accommodation will cost Plaintiff on average $1,440.

56. Without an injunction preventing Defendants from enforcing the PWFA, Plaintiff will be irreparably harmed.

57. If not enjoined by this Court, Defendants will continue to enforce the PWFA against Plaintiff.

58. Plaintiff has no plain, speedy, and adequate remedy at law to either prevent Defendants from enforcing the PWFA nor recover for its injuries.

59. The PWFA itself imposes these irreparable harms on Plaintiff. EEOC's implementing rule increases, but does not independently create, these irreparable harms. Therefore the Court must enjoin the statute to adequately redress these irreparable harms.

## Count III
### Rulemaking In Excess of Statutory Authority (5 U.S.C. § 706(2)(C))

60. For the reasons set forth above, the PWFA is unconstitutional.

61. Courts are empowered to vacate an agency rule that is "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).

62. Pursuant to § 105 of the PWFA, on April 19, 2024, EEOC issued a final rule to implement the PWFA. *See* Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29,096 (Apr. 19, 2024). This rule is a final agency action under the APA. 5 U.S.C. § 706.

63. EEOC's implementing rule relies solely on the PWFA, 42 U.S.C. § 2000gg et seq., for its authority. *See* Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29,096, 29,183 (Apr. 19, 2024) ("Authority: 42 U.S.C. 2000gg et seq.").

64. EEOC does not have authority under other statutes to promulgate its rule. *See Young v. UPS*, 575 U.S. 206 (2015). If the PWFA is invalid, EEOC's residual rulemaking authority under Title VII is limited to procedural rules. 42 U.S.C. § 2000e–12(a).

65. Because the entire PWFA is unconstitutional, including the section that authorizes EEOC's rule, EEOC no longer has "statutory . . . authority" to issue or enforce the rule. EEOC's rule falls along with the statute. 5 U.S.C. § 706(2)(C).

66. Therefore, the court should "hold unlawful and set aside" EEOC's Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29,096 (Apr. 19, 2024), because it is in excess of statutory authority. 5 U.S.C. § 706(2).

## VII.   Prayer for Relief

Plaintiff respectfully requests this Court:

1. Declare that the Pregnant Workers Fairness Act, Pub. L. 117-328, Division II, 136 Stat. 4459, 6084 (2022), was adopted in violation of the Constitution and is therefore unlawful.

2. Issue preliminary and permanent injunctive relief enjoining Defendants from enforcing the Pregnant Workers Fairness Act.

3. Hold unlawful and set aside Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29,096 (Apr. 19, 2024), because it is in excess of statutory authority.

4. Award such other relief as the Court deems just and equitable.

Dated: July 22, 2024								Respectfully submitted,

/s/ *Matthew Miller*
ROBERT HENNEKE
Texas Bar. No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar. No. 24076767
cweldon@texaspolicy.com
MATTHEW MILLER
Texas Bar. No. 24046444
mmiller@texaspolicy.com
ERIC HEIGIS
Virginia Bar No. 98221
eheigis@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Facsimile:   (512) 472-2728